IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARGUERITE DEAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-1221 |
| ACTS RETIREMENT LIFE COMMUNITIES, | * | |
| | * | |
| Defendant. | | |
| | *** | |

# MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Acts Retirement Life Communities' ("Acts") Motion to Dismiss (ECF No. 17). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant the motion in part and deny it in part.

## I.   BACKGROUND

### A.   Factual Background[1]

Plaintiff Marguerite Dean worked as a security guard at Acts, a senior living facility. (Compl. ¶¶ 7–8, ECF No. 1). As a security guard, she "maintain[ed] the safety and welfare of residents and [] assist[ed] with any emergencies." (Id. ¶ 14). During the COVID-19 pandemic, Dean was a "front-line worker" and often worked overtime to ensure the residents' safety. (Id. ¶¶ 17–18). On August 21, 2021, Acts announced a company-wide COVID-19 vaccine mandate for employees. (Id. ¶ 13). Employees who remained

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

unvaccinated after October 31, 2021 would be terminated, subject to limited exemptions for religious or medical reasons. (Id. ¶¶ 13, 24).

Dean submitted three exemption requests, all of which were denied. (Id. ¶ 25). First, on September 21, 2021, she submitted a request for medical exemption. (Id. ¶ 28). Her first request included antibody test results showing that she had natural immunity from a prior COVID-19 infection, as well as a note from her doctor explaining concerns about side effects and severe fatigue. (Id. ¶¶ 26–28). Dean believes that the vaccine is unnecessary for people who, like her, have already contracted and recovered from COVID-19. (See id. ¶ 58). When Acts refused to grant her exemption, she submitted a second medical exemption request and a religious exemption request. (Id. ¶¶ 29–30).

In her religious exemption request, Dean explained that she is Catholic and that she objected to the COVID-19 vaccine because of the use of aborted fetal cells in the vaccine's production: "[b]eing born and raised Roman Catholic using aborted fetal cells for anything goes against everything I was taught and believe in. Every human life whether in utero or living on this planet is a gift from God, one of the Ten [Commandments] states, 'Thou shalt not kill.'" (Id. ¶ 33).

Dean alleges that Acts granted other religious exemptions sought by other employees, but "upon information and belief, those exemptions that were granted were ultimately rescinded in September, 2021." (Id. ¶ 36). Acts did not explore alternate accommodations with Dean or engage in an interactive process to determine whether it could accommodate her request to remain unvaccinated. (Id. ¶ 37). On November 1, 2021, Acts terminated Dean for failure to comply with the vaccine mandate. (Id. ¶ 38).

B.  **Procedural History**

On April 5, 2022, Dean filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 39). In the charge, Dean identified religion as the sole basis of discrimination, and she stated that she had been specifically "discriminated against because of [her] religion (Catholic) in violation of Title VII of the Civil Rights Act." (EEOC Charge at 2, ECF No. 1-4).[2] The EEOC issued a Right to Sue Letter on December 20, 2022. (Compl. ¶ 40).

Dean filed this action on March 20, 2023. (ECF No. 1). She makes the following claims: religious discrimination under Title VII (Count I); disability discrimination under the Americans with Disabilities Act ("ADA") (Count II); and disability discrimination under the Genetic Information Nondiscrimination Act of 2008 ("GINA") (Count III). (Compl. ¶¶ 80–125). In support of her ADA claim, Dean alleges that Acts regarded Dean as disabled because she was unvaccinated, and that it discriminated against her on this basis. (Id. ¶ 103). As for the GINA claim, she alleges that the vaccines were "gene therapy" that "may integrate with a recipient's DNA," and that Acts unlawfully discriminated against her based on her genetic information. (Id. ¶¶ 119–125).

Dean seeks a declaratory judgment that Acts discriminated against Dean in violation of the statutes listed above, injunctive relief reinstating her to her former position, compensatory damages, and attorney's fees. (Compl. at 21). Acts filed the instant Motion

---

[2] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

3

to Dismiss on May 30, 2023. (ECF No. 17). Dean filed an Opposition on June 27, 2023, (ECF No. 27), and Acts filed a Reply on July 25, 2023, (ECF No. 30).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

4

allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**C.     Analysis**

    **1.     Administrative Exhaustion**

Acts argues that Dean's claims under the ADA and GINA must be dismissed for failure to exhaust administrative remedies because Dean mentioned only religious discrimination in her EEOC charge. (Mot. at 7–9). Dean acknowledges that the charge does not explicitly mention disability discrimination or genetic discrimination, but she avers that the charge must be liberally construed and that the ADA and GINA claims are reasonably related to the religious discrimination claim. (Resp. Opp'n Mot. Dismiss ["Opp'n"] at 4–5, ECF No. 27). At bottom, the Court agrees with Acts and will dismiss the ADA and GINA claims.[3]

Before a plaintiff may file suit under Title VII, the ADA, or GINA, he is required to exhaust his administrative remedies by filing a charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(f)(1). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005). Thus,

---

[3] Because these claims will be dismissed on this basis, the Court need not address whether Dean has stated a claim under the ADA or GINA.

"if the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." Id. (citation omitted). For example, "the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." Id. Nevertheless, courts construe administrative charges liberally because lawyers do not usually complete them. Id.; Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."). Accordingly, "if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation," the plaintiff has exhausted her remedies. See Chacko, 429 F.3d at 509 (citing Smith v. First Union Nat'l Bank, 202 F.3d 234, 247–48 (4th Cir. 2000)) (plaintiff exhausted administrative remedies when both formal complaint and administrative charge alleged management retaliated against her because she complained about supervisor's sexual harassment)).

Here, Dean's charge states that she submitted medical and religious exemption requests, but Acts fired her for refusing to comply with the vaccine mandate. (EEOC Charge at 2).[4] She identified only religion as the basis for the alleged discrimination, and

---

[4] Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions, including documents attached to the motion to dismiss, so long as they are integral to the

she said that "I have been discriminated against because of my religion (Catholic) in violation of Title VII." (Id.). Because Dean makes no mention of a disability or of genetic information in the charge, she did not exhaust her administrative remedies as to her ADA and GINA claims. See Chacko, 429 F.3d at 509 (explaining that a plaintiff's claim is generally barred when he introduces a new basis of discrimination in formal litigation).

Dean contends that her ADA and GINA claims "reasonably grow[] from her religious discrimination claims raised with the EEOC" because she stated that Acts denied her medical exemption request in the charge. (Opp'n at 5–6). According to Dean, the mention of the medical exemption put the EEOC on notice of Dean's "medical concerns," and because the ADA and GINA claims arise from the same circumstances and facts as her religious discrimination claim, they are reasonably related to that underlying claim. (Id. at 5–7). In support of her argument, Dean cites Moore v. Hexacomb Corp., 670 F.Supp.2d 621 (W.D.Mich. 2009), where the District Court for the Western District of Michigan held that the plaintiff had properly exhausted his ADA termination claim, even though it had not been explicitly listed on his charge, because his employer decided he was unable to perform his job due to his disability and the "EEOC investigation into the failure to

---

complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994).
  Here, Dean referred to the exemption requests and the EEOC charge in the Complaint, and there is no dispute that documents relating to the administrative record are integral to his case and authentic. See White v. Mortg. Dynamics, Inc., 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that documents from the administrative record were integral to plaintiff's complaint). Accordingly, the Court will consider these documents in its analysis.

accommodate claim would have disclosed the termination claim." Id. at 632; (see Opp'n at 6).

The Court finds that Dean's mention of the medical exemption request in the EEOC charge is insufficient to show that her ADA and GINA claims are reasonably related to her religious discrimination claim. Her charge makes no mention whatsoever of a disability or of genetic information, and no reasonable reading of the charge would put the EEOC or Acts on notice that Dean might bring such claims. The ADA claim relies on the strained argument that Acts regarded Dean as disabled without the vaccine, (Compl. ¶ 103),—this is a far cry from the straightforward complaint of religious discrimination in the charge. Similarly, in the GINA claim, Dean alleges that the COVID-19 vaccines are gene therapy, and that her termination for refusing to undergo such therapy violates GINA. (Id. ¶¶ 120–125). Again, the GINA claim constitutes a factual and logical leap from the allegations in the EEOC charge, and an investigation into the religious discrimination claim would not have revealed the ADA or GINA claims.

Lastly, the Moore case cited by Dean is inapposite. In Moore, the plaintiff had a knee condition and requested to be assigned a job that would limit the pressure on his knees. 670 F.Supp.2d at 625. The Defendant refused, sent Moore home on leave, and eventually terminated him for his inability to complete his assigned duties. Id. Moore filed a charge of discrimination on the basis of failure to accommodate his disability only, id., but he later alleged termination in violation of the ADA in his lawsuit, id. at 631. The court found that he had nevertheless exhausted his administrative remedies as to the termination claim because "it [was] reasonable to conclude that the EEOC investigation into the failure to

8

accommodate claim would have disclosed the termination claim." Id. at 632. For the reasons set forth above, the District Court for the Western District of Michigan's reasoning does not apply to the instant case. The ADA and GINA claims are unrelated to the EEOC charge's claim for religious discrimination. In Moore, the plaintiff's charge discussed his disability and how the defendant sent him home because of it, so the EEOC and the Defendant were on notice of ADA claims related to Defendant's failure to accommodate his disability. See id. In the instant case, Dean failed to discuss her disability or genetic information in her EEOC charge. Thus, she failed to exhaust her remedies as to the ADA and GINA claims, and those claims will be dismissed.

### 2. Religious Discrimination

Title VII prohibits religious discrimination and generally requires employers to accommodate employees' religious beliefs unless accommodation would impose an undue hardship on the employer's business. 42 U.S.C. § 2000e-2(a)(1), e(j). There are two theories for asserting religious discrimination claims: disparate treatment and failure to accommodate. Brennan v. Deluxe Corp., 361 F.Supp.3d 494, 505 (D.Md. 2019). The Court will address whether Dean has stated a claim under each theory.

A plaintiff may establish a Title VII claim "either 'through direct and indirect evidence of retaliatory [or discriminatory] animus,' or through a burden-shifting 'pretext' framework." Netter v. Barnes, 908 F.3d 932, 938 (4th Cir. 2018) (quoting Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 249 (4th Cir. 2015)).

The Complaint does not include allegations of direct evidence of discrimination. See Cole v. Fam. Dollar Stores of Md., Inc., 811 F.App'x 168, 175 (4th Cir. 2020) ("Direct

9

evidence is 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999))). Accordingly, the Court will evaluate Dean's claims under the burden-shifting framework first articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under McDonnell Douglas, Dean must eventually put forth a prima facie case showing that Acts terminated her under circumstances giving rise to an inference of unlawful discrimination. See id. at 802. The precise formulation of the required prima facie showing will vary in "differing factual situations," id. at 802 n.13, and the elements were "never intended to be rigid, mechanized, or ritualistic,'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). If Dean succeeds in establishing a prima facie case, the burden shifts to the employer to "present a legitimate, non-discriminatory reason for its employment action." Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). If the employer does so, "the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Id.

The Court is mindful that a Title VII plaintiff need not satisfy all the elements to survive a motion to dismiss. See Swierkiewicz, 534 U.S. at 510 ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."); accord Parker v. Child.'s Nat'l Med. Ctr., Inc., No. ELH-20-3523, 2021 WL 5840949, at *9 (D.Md. Dec. 9, 2021) ("At the motion to dismiss stage, a plaintiff need not establish a prima facie case of discrimination."). Instead, at the motion to dismiss stage,

a plaintiff need only "allege[] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). Thus, the plaintiff must generally show that the employer took adverse action against the plaintiff "under circumstances which give rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); Adams, 640 F.3d at 558.

  a. **Disparate Treatment**

In a disparate treatment case, the elements of a prima facie case of discrimination under Title VII are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Brennan, 361 F.Supp.3d at 506. Importantly, "an employee must demonstrate that the employer treated her differently than other employees because of her religious beliefs." Id. at 507 (cleaned up). In support of her claim, the plaintiff might allege "that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." Id.

Acts argues that Dean has failed to state a claim for religious discrimination based on disparate treatment because she has not established the first or fourth element. (See Mot. at 11–12). Regarding the first element, Dean says she is Catholic and that she objected to the vaccine mandate because of her beliefs, (Compl. ¶ 85), and thus she has shown membership in a protected class. As to the fourth element, Dean has failed to show that Acts treated her differently than other employees because of her Catholic faith. Dean

11

contends that she has satisfied this element because "Acts granted other religious exemptions," (Compl. ¶ 36), but she acknowledges that the "exemptions that were granted were ultimately rescinded in September, 2021." (Id.; see Opp'n at 8). These allegations do not satisfy the fourth element because she does not allege that other employees of a different religion, or no religion, received more favorable treatment from Acts. See Brennan, 361 F.Supp.3d at 507. Accordingly, her religious discrimination claim on the basis of disparate treatment must fail.

### b. Failure to Accommodate

An employer has a general duty "to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." E.E.O.C. v. Firestone Fibers & Textiles Co., 515 F.3d 307, 312 (4th Cir. 2008); see 42 U.S.C. § 2000e(j). In a failure to accommodate case, the plaintiff establishes a prima facie claim by showing: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." Id. If the plaintiff succeeds in establishing a prima facie case, "the burden then shifts to the employer to show that it could not reasonably accommodate the plaintiff's religious needs without undue hardship." Id. (cleaned up).

Acts argues that Dean has failed to establish the second element, and that Acts would suffer an undue hardship if it granted her religious exemption request. (Mot. at 12–17). Regarding the second element, the Court finds that Dean informed Acts of her religious belief when she submitted her exemption request, which said she was Roman

12

Catholic, and she objected to the vaccine because of the use of aborted fetal cells. (Compl. ¶ 33). She has also clearly established the first and third elements because of her religious beliefs, (id.), and her termination for failure to comply with the vaccine mandate, (id. ¶ 38). Thus, Dean has made out a prima facie case for her failure to accommodate claim.

The burden then shifts back to Acts to show that it could not reasonably accommodate Dean's needs without undue hardship. See Firestone Fibers, 515 F.3d at 312. To show an undue hardship, "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." Groff v. DeJoy, 600 U.S. 447, 470 (2023). "[C]ourts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, 'size and operating cost of [an] employer.'" Id. at 470–71. "Both economic and non-economic costs can pose an undue hardship upon employers." E.E.O.C. v. Greyhound Lines, Inc., 554 F.Supp.3d 739, 752 (D.Md. 2021). Non-economic costs include damage to employee moral or an adverse impact on other employees. Id.

Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment. See Groff, 600 U.S. at 468 (referring to undue hardship as a "fact-specific inquiry"); Stroup v. Coordinating Ctr., No. MJM-23-94, 2023 WL 6308089, at *8 (D.Md. Sept. 28, 2023) (defendants moved to dismiss on several claims, but separately moved for summary judgment on the undue hardship issue, so the Court reviewed the record under Federal Rule 56); Greyhound Lines, 554 F.Supp.3d at 757 (describing the employer's burden to establish an undue hardship at the summary judgment

13

stage). Acts does not identify, and the Court could not locate, a single case where a federal court decided whether an accommodation imposed an undue hardship on a motion to dismiss. Further, Acts did not style its motion to dismiss as one in the alternative for summary judgement. Accordingly, it would be premature to rule on the undue hardship issue, and the motion to dismiss will be denied on the failure to accommodate claim.[5]

### 3. Retaliation

The Court notes that Dean does not include a separate claim for retaliation in her Complaint. Nevertheless, because she alleges that Acts "retaliated against [her] due to her religious beliefs," (Compl. ¶ 90), the Court will determine whether Dean has stated a claim for retaliation.

Title VII prohibits an employer from retaliating against an employee who exercises her Title VII rights. Hart v. Lew, 973 F.Supp.2d 561, 582 (D.Md. 2013). In order to establish a prima facie claim of retaliation under Title VII, Dean "must show that she engaged in protected activity, that her employer took adverse action against her, and that a causal relationship existed between the protected activity and the adverse employment activity." Id. (cleaned up). If she succeeds in establishing a prima facie case, the McDonnell Douglas framework applies, just as it does for a discrimination claim: "If a plaintiff puts

---

[5] The Court notes that Acts makes reasonable, albeit fact-based, arguments for undue hardship. (See Mot. at 12–15). Acts is a senior living facility servicing elderly, vulnerable individuals, and Dean was self-admittedly a front-line worker during the pandemic. (Id.; Compl. ¶ 17). The Center for Disease Control and Prevention guidance at the time encouraged vaccination, and Acts would clearly suffer negative reputation and economic effects if it had ignored such guidance and allowed employees to remain unvaccinated. (Mot. at 12–15; Reply Supp. Mot. Dismiss at 8–10 ["Reply"], ECF No. 30). Acts may re-assert these arguments at the summary judgment stage.

forth sufficient evidence to establish a prima facie case of retaliation and a defendant offers a non-discriminatory explanation for the adverse action, the plaintiff bears the burden of establishing that the employer's proffered explanation is pretext." Id. (cleaned up).

Here, Dean fails to state a retaliation claim because she has not alleged that a causal relationship existed between her protected activity (submitting a religious exemption and accommodation request) and her termination. Indeed, she alleges that she "was officially terminated on November 1, 2021 for failing to comply with Act's vaccine mandate." (Compl. ¶ 38). In her Opposition, Dean argues that she was also terminated because of her "position regarding the vaccine mandate," but her argument misses the mark and lacks factual support. (Opp'n at 12). On the face of the Complaint, Acts terminated Dean because she did not get vaccinated prior to the October 31, 2021, deadline, not because she submitted exemption requests or objected on religious grounds. Acts sums this up in its Reply:

> By way of illustration, had Plaintiff objected to the vaccination policy on the basis of her religion and then subsequently received the vaccine, she would not have been terminated. Similarly, had Plaintiff objected to the vaccine because she thought it contained microchips (another oft-repeated conspiracy theory related to the COVID-19 vaccine) that had nothing to do with religion, her employment would have been terminated.

(Reply at 12). The Court agrees with Acts' reasoning because the Complaint does not contain allegations to the contrary; it actually confirms Dean was fired for failing to comply with Acts' policy, not her beliefs or her exemption request. (Compl. ¶ 38). Accordingly, to the extent that Dean attempts to state a claim for retaliation, that claim must be dismissed.

15

## III.     CONCLUSION

For the foregoing reasons, the Court will grant the Motion to Dismiss (ECF No. 17) in part and deny it in part. The Motion will be granted as to the ADA and GINA claims (Counts II and III), as well as the retaliation claim. The Motion will otherwise be denied. Acts will answer the Complaint as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. A separate Order follows.

Entered this 6th day of March, 2024.

/s/
George L. Russell, III
United States District Judge