IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARGUERITE DEAN,** | * | |
| **Plaintiff,** | * | |
| v. | * | Civil No. 1:23-cv-1221-GLR |
| **INTEGRACE, INC.,** | * | |
| **Defendant.** | * | |
| * * * | | |

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT is a discovery dispute regarding responses to Defendant's Requests for Production.[1] *See* Def.'s Ltr., ECF 54. I scheduled a telephone conference and directed Plaintiff to submit a brief letter outlining her position. *See* Pl.'s Ltr., ECF 56. On March 14, 2025, I held a hearing by telephone conference with counsel for the parties. This opinion memorializes the rulings I issued at the conclusion of the hearing. For the reasons stated during the telephone conference and below, Plaintiff shall supplement its responses to Defendant's Requests for Production 14, 15, and 16.

### I.   BACKGROUND

On March 20, 2023, Plaintiff filed this discrimination action against Defendant, alleging unlawful termination based on non-compliance with Defendant's company-wide COVID-19 vaccine mandate. *See* Compl., ECF 1. On May 9, 2023, the Eastern District of Pennsylvania transferred the case to this District. ECF 15. After Defendant filed its answer, the Court entered

---

[1] On February 3, 2025, Judge Russell, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, referred this case to me for "resolution of ECF 54." ECF 55.

an initial scheduling order. ECF 35. Less than a month later, upon joint motion, Judge Russell stayed discovery pending the outcome of the settlement conference. ECF 41. When the matter did not settle, the Court lifted the stay and set a December 13, 2024 discovery deadline. ECFs 43, at 1; 44, at 1. Upon Plaintiff's request, the Court extended this deadline through March 13, 2025. ECFs 47; 53, at 2.

The relevant dispute arose in September 2024, after Defendant served 25 Requests for Production ("RFPs") on Plaintiff. *See* Def.'s Ex. 1, 54-1. On November 5, 2024, Plaintiff objected to RFPs 14, 15, and 16. *See* Def.'s Ex. 3, ECF 54-3, at 1; Def.'s Ex. 2, ECF 54-2, at 5-6. Defendant's RFPs 14-16 and Plaintiff's objections are as follows:

> [RFP 14]: If you are seeking compensatory damages for emotional distress, pain, suffering, loss of enjoyment of life, humiliation, embarrassment, and mental anguish, or for any other reason that will rely, in whole or in part, on your emotional or mental state, please provide all documents which reflect or relate to your consultation with or treatment by any physicians, psychiatrists, psychologists, therapists, or other health care providers from Plaintiff's date of birth through the present.
>
> Response: Objection - The records requested are protected from disclosure by Plaintiff's constitutional right to privacy, physician-patient privilege and medical confidentiality. Furthermore, this request is oppressive, overbroad and unduly burdensome. This request violates privacy interests and is disproportionate to the needs of the case.
>
> [RFP 15]: If you are seeking compensatory damages for emotional distress, pain, suffering, loss of enjoyment of life, humiliation, embarrassment, mental anguish, and the like, or for any other reason that will rely, in whole or in part, on your emotional or mental state, please provide all documents, other than documents provided in response to Request No. 14, that pertain to any treatment for your physical health from January 1, 2018 through the present.
>
> Response: Objection - The records requested are protected from disclosure by Plaintiff's constitutional right to privacy, physician-patient privilege and medical confidentiality. Furthermore, this request is oppressive, overbroad and unduly burdensome. This request violates privacy interests and is disproportionate to the needs of the case.
>
> [RFP 16]: Any and all online profiles, postings, messages (including, without limitation, tweets, replies, retweets, direct messages, status updates, wall comments, groups joined, activity streams, and blog entries), photographs, videos, and online communications by you that refer, pertain or relate to the allegations set forth in the Complaint or Defendant's Answer, including allegations relating to any category of damages requested by you.

> <u>Response</u>: Objection – Documents requested are not relevant to any claims in this action nor are likely to lead to discovery of admissible evidence. Furthermore, this request is oppressive, overbroad and unduly burdensome request. This interrogatory violates privacy interests and is disproportionate to the case.

Def.'s Ex. 2, at 5-6.

Defendant now contends that (1) Plaintiff placed her health at issue in this case by seeking compensatory damages and (2) the information sought by RFPs 14, 15, and 16 is relevant and proportional. Def.'s Ltr., at 1-2. Plaintiff maintains that (1) her relief sought involves "garden-variety" emotional damages, therefore health is not at issue, and is privileged or confidential, and (2) the information sought by RFPs 14, 15, and 16 is irrelevant, not proportional, and violates her privacy and constitutional rights. Pl.'s Ltr., at 1-2.

## II.     LEGAL STANDARD

As a general matter, a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Discovery is relevant if there is "any possibility that the information sought may be relevant to the claim or defense of any party." *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (internal quotation marks and citation omitted). Because relevance determines whether a matter is discoverable, "[d]iscoverable evidence is broader than admissible evidence[.]" *Est. of Bryant v. Balt. Police Dep't*, No. ELH-19-384, 2020 WL 6161708, at *3 (D. Md. Oct. 21, 2020) (internal quotation marks and citations omitted). In determining whether discovery is proportional, courts consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "The requesting party bears the burden of establishing relevance and proportionality, while the party resisting discovery bears the burden of demonstrating why

3

discovery should not be permitted." *Hall v. Balt. Police Dep't*, No. 24-1137-RDB, 2025 WL 509130, at *6 (D. Md. Feb. 13, 2025).  However, "[t]he burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

### III.   ANALYSIS

For the following reasons, the Court directs that Plaintiff respond to the RFPs, albeit with some modification to RFP 14.  In general, the Court finds that Defendant's requests are appropriate.  For RFP 14, the Court concludes that the relevant time should be shortened.

#### A.  RFPs 14 and 15

The Court disagrees with Plaintiff's resistance to RFPs 14 and 15 on the basis that her demand for "garden-variety" emotional damages does not place her health at issue and, as a result, the documents requested are irrelevant.  A party seeking compensatory damages for pain and suffering "puts her mental and physical condition at issue and must produce requested medical records." *Jimoh v. Charlotte-Mecklenburg Hous. P'ship, Inc.*, No. 08-cv-495-RJC, 2009 WL 4062881, at *1 (W.D.N.C. Nov. 20, 2009) (collecting cases); *see also Carr v. Double T Diner*, No. WMN-10-0230, 2010 WL 3522428, at *2 (D. Md. Sept. 8, 2010) ("A [p]laintiff's mental state is at issue for purposes of discovery because her emotional suffering is germane to the calculation of damages she requested in her complaint.").  Therefore, a party must produce medical records even where the party seeks "garden-variety" emotional damages because the information is "relevant as to both causation and the extent of [the] plaintiff's alleged injuries and damages." *E.E.O.C. v. Sheffield Fin., LLC*, No. 06-889, 2007 WL 1726560, at *4 (M.D.N.C. June 13, 2007) (collecting cases); *see, e.g., Stokes v. IKEA US Retail, LLC*, No. 22-1377-JMC, 2023 WL 1970476, at *4-5

(D. Md. Feb. 13, 2023) (ordering disclosure where the plaintiff "requested vague compensatory damages . . . and . . . clarified through an interrogatory response that she is seeking damages for 'pain and suffering'"); *Pajak v. Under Armour, Inc.*, No. 19-160, 2020 WL 265205, at *4 (N.D. W. Va. Jan. 17, 2020) (ordering disclosure where the plaintiff did not claim "any medical or mental health treatment as a result of the [employment] termination"). As explained by another jurist of this Court, such information includes "events arising before, during, and after the concerns raised in the [c]omplaint. To the extent Plaintiff may have suffered from pre-existing injuries, at a minimum Defendant is entitled to explore such in an effort to establish a baseline against which to measure any incremental changes." *Harik v. Swales Aerospace*, No. AW-05-1182, 2006 WL 8457008, at *2 (D. Md. Mar. 6, 2006).

As was the case in *Stokes*, Plaintiff seeks, in general terms, compensatory damages in her complaint, *see* Compl. at 21, and clarified through her interrogatories that she seeks damages for pain and suffering, Def.'s Ex. 4, ECF 54-4, at 3. Defendant may explore Plaintiff's medical history for the reasons observed in *Stokes* and *Harik*. Therefore, Plaintiff must produce documents responsive to RFP 14 and 15.[2]

Plaintiff fares better on the issue of temporal scope as to RFP 14, but only in part. The language of that request covers, in essence, her records relating to or reflecting any medical consultation in Plaintiff's life. At this juncture, the Court does not believe that exploring her

---

[2] The authority Plaintiff cites is inapposite. It is true that the Court has weighed the "garden-variety" nature of damages in discovery disputes. But that issue arose in the context of ordering a Rule 35 mental examination or waiving privilege, not relevance or a non-privilege objection to document production. *See J.F. v. Correct Care Sols., LLC,* No. GJH-16-2177, 2018 WL 1276801, at *2 (D. Md. Mar. 9, 2018); *see also Stokes*, 2023 WL 1970476, at *4-5 (recognizing cases that ask whether emotional damages are "garden-variety" to determine whether a party waived psychotherapist-patient privilege). As Judge Nickerson opined in *Carr*, "the analytical framework used to determine whether a party's mental state is at issue in discovery is fundamentally different from that used in other contexts." 2010 WL 3522428, at *3.

emotional damages beginning in 2021 requires all documents she possesses reflecting any medical visit or consultation ever. To establish a baseline against which to assess her damages claims, Defendant may receive documents predating the period covered by the allegations. *See generally Marshall v. Univ. of Md. Med. Ctr.*, No. TDC-17-2779, 2018 WL 3727947, at *4, *6 (D. Md. Aug. 16, 2018) (recognizing the Court's "ability to limit the scope of [medical record] discovery requests to a time frame that is proportional to the needs of the case"). Defendant may also, contrary to Plaintiff's position, receive documents through today. While Plaintiff proposed a limit of one year after her termination, Plaintiff's counsel acknowledged on the conference call that Plaintiff's damages may include "lingering" effects of the termination and post-termination challenges with obtaining satisfactory employment. If the alleged damages continue more than one year after her termination, Defendant is entitled to explore past her proposed cutoff.

Therefore, on the matter of RFP 14, the Court finds a range of January 1, 2018 to the present—the same period applied in RFP 15—appropriate. This period allows Defendant to establish a baseline, accounts for relevant conversations and impressions in 2020 (the time of the COVID-19 pandemic onset), includes the primary events of 2021 (i.e., Defendant's vaccine mandate and Plaintiff's termination), and covers post-termination developments. This conclusion is driven as much by proportionality considerations as relevance ones. If, for example, information produced to Defendant suggests the existence of pre-2018 events or information relevant to establishing a baseline and/or resisting Plaintiff's damages argument, the Court may consider whether further relief is appropriate. But given the "garden-variety" nature of Plaintiff's claim, Plaintiff's age, and the fact that no other discovery to date has provided reason to span several decades within this request, the Court does not believe that Defendant's "from birth" demand is proportional at this time.

Plaintiff also cites her right to privacy and physician-patient privilege as reasons to not respond to RFPs 14 and 15. Pl.'s Ltr., at 1. The Court recognizes Plaintiff's privacy concerns as valid. *See Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004) ("It is clear there is strong federal policy in favor of protecting the privacy of patient medical records."). But they are not absolute bars to discovery and, therefore, are better addressed by a protective order. *See, e.g., Stokes*, 2023 WL 1970476, at *3 (ordering the parties to draft a protective order to cover sensitive medical information); *Sheffield*, 2007 WL 1726560, at *6 (recognizing that a protective order accounted for sensitive medical information); *In re Grand Jury Subpoena John Doe No. A01-209*, 197 F. Supp. 2d 512, 514 (E.D. Va. 2002) ("[F]ederal courts recognize that patients have an interest in the privacy of their medical records[, but] . . . this privacy interest [] is neither an absolute right nor dispositive in all circumstances."). The parties are welcome to request a protective order accounting for such sensitive medical information. As for privilege, there has been no specific assertion on a document-by-document basis. *See Richardson v. Sexual Assault/Spouse Abuse Research Ctr., Inc.*, 270 F.R.D. 223, 228 (D. Md. 2010) ("[The party asserting privilege] must . . . demonstrate that each element . . . of the applicable privilege . . . is present for each document for which they claim the existence of a privilege."). The Court will address such assertion if it arises.[3]

## B. RFP 16

Plaintiff argues that RFP 16 is irrelevant, overbroad, and violates her privacy and constitutional rights. Pl.'s Ltr., at 2. Plaintiff avers that RFP 16 is improper because it seeks

---

[3] On the call, the Court noted that while privilege is not ripe at this time, a general physician-patient privilege—which Plaintiff's objection invokes—is recognized in state courts but not federal courts. *See, e.g.*, *Adams v. Sharfstein*, No. CCB-11-3755, 2012 WL 2992172, at *3 (D. Md. July 19, 2012).

information showing that Plaintiff's religious beliefs are not sincere. *Id.* (citing *Burwell v. Hobby Lobby Stores, Inc.* 573 U.S. 682, 686 (2014)). The Court disagrees.

As an initial matter, Plaintiff's online communications relating to the allegations in the complaint and answer—not just those related to religious beliefs—are relevant. *See Wolgast v. Tawas Area Sch. Dist. Bd. of Educ.*, No. 15-10495, 2015 WL 13660458, at *4 (E.D. Mi. July 27, 2015) (finding an RFP relevant because it sought "online communications relating to the issues raised in [the plaintiff's] amended complaint [that] could be highly relevant to [the d]efendants' defense"). And even if Plaintiff is correct that Defendant seeks information relating to the sincerity of her religious belief, she is mistaken that the content of her accounts (including anything bearing on her religious beliefs) "is not probative of any elements." Pl.'s Ltr. at 2. While courts exercise caution in being the arbiters of spiritual or religious beliefs and tenets, a party's sincerity and religious motivation are elements of a discrimination case that must be resolved by the factfinder. *See, e.g.*, *Ellison v. Inova Health Care Servs.*, 692 F. Supp. 3d 548, 556-57 (E.D. Va. 2023) (discussing requirements for alleging a sincere, religious belief); *accord Cesare v. PACT MSO, LLC*, 736 F. Supp. 3d 93, 100-104 (D. Conn. 2024) (denying summary judgment after examining whether evidence presented a triable issue on both sincerity and religiosity). Therefore, discovery regarding a person's sincere, religious belief is appropriate. *See Sulander v. Syneos Health, LLC*, No. 23-539-FL, 2025 WL 662394, at *6 (E.D.N.C. Feb. 28, 2025) (compelling response to an interrogatory seeking information relevant to the sincerity of plaintiff's religious belief); *Az. Yage Assembly v. Barr*, No. 20-2373-PHX, 2024 WL 1011677, at *8 (D. Az. Feb. 22, 2024) (same); *see also U.S. Equal Emp't Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 142-43 (4th Cir. 2017) (affirming a decision where the jury considered evidence regarding the sincerity of a party's religious belief).

It is not necessary to impose a specific date cutoff for RFP 16. The request is limited by its tether to the complaint and answer. Also, the relevant time is limited by the tether to social media, which achieved widespread use and popularity this century. Therefore, a lack of specific date in this request does not introduce the same concerns as a request for information about medical consultations for Plaintiff's entire life.

## IV.   CONCLUSION

For the reasons stated above, the Court DIRECTS Plaintiff to produce discovery responsive to RFPs 14, 15, and 16. Plaintiff must produce discovery responsive to RFP 14 from January 1, 2018 to present. Plaintiff shall produce discovery responsive to RFPs 15 and 16 as originally served upon her. If either party discovers information necessitating further relief from the Court, then that party shall file a motion with the Court requesting such relief.[4]

Date: March 17, 2025

/S/
Charles D. Austin
United States Magistrate Judge

---

[4] During the conference call, counsel discussed the possibility of other issues not ripe for the Court's determination. One such issue may be the aforementioned potential for privilege in documents responsive to RFP 14. As another example, on the telephone conference, defense counsel raised the possibility of reopening Plaintiff's deposition for further questioning if the RFP production yields information previously unknown to Defendant and therefore not explored at Plaintiff's deposition. Any decisions or directives on that possibility should wait until Defendant receives and assesses Plaintiff's supplemental response.